OPINION OF THE COURT
Michael D. Stallman, J.
In this summary nonpayment proceeding, petitioner landlord seeks a final judgment of possession on default. This application must be denied, notwithstanding the absence of opposition.
It is the reason for the tenant’s default which makes this application so disturbing: review of the submitted papers reveals that the respondent tenant was apparently dead at the time this proceeding was purportedly commenced.
An application for a final judgment upon a respondent’s nonappearance is not a request for the performance of a ministerial act. A movant is not automatically entitled to any relief sought, regardless of defects in jurisdiction, allegations or proof. (See, e.g., Joosten v Gail, 129 AD2d 531 [1st Dept].) Neither is a Judge obliged to grant relief, merely because it is not opposed. Rather, a Judge must exercise discretion to determine whether the relief sought is merited, appropriate and within the court’s jurisdiction. Accordingly, the court has denied petitioner’s application for the reasons set forth below.
I. STATUTORY FRAMEWORK
It is clear that a lease for term of years which has not yet expired is not automatically terminated by the death of the lease. (2 Rasch, New York Landlord & Tenant — Summary Proceedings § 1016 [2d ed]; Remford Corp. v Rosenfeld, 274 *778 App Div 769 [1st Dept].) Upon the death of the tenant, the unexpired leasehold interest of the decedent becomes personal property of the estate, and does not automatically revert to the lessor. (EPTL 13-1.1; Schnee v Jonas Equities, 109 Misc 2d 221 [App Term, 2d Dept].) Accordingly, the law provides that the estate, not the landlord, is the sole party entitled to possession of the premises for the balance of the lease,[1] until a will is probated or the administrator distributes the property. (Park Ave. Manhattan Assocs. v Carnegie, NYLJ, Mar. 23, 1990, at 21, col 2 [App Term, 1st Dept], citing Joint Props. Owners v Deri, 113 AD2d 691, 693-694 [1st Dept].)
The statutory scheme in New York is clearly structured to protect the interests of the estate, its personal representatives and potential distributees. Any action against the estate must name the executor or administrator in his/her representative capacity as defendant. (EPTL 11-3.1; 100 W. 72nd St. Assocs. v Murphy, 144 Misc 2d 1036 [Civ Ct, NY County 1989].) Thus, an owner’s first task is to attempt to ascertain if there are any survivors, in occupancy or not, and whether or not there is a personal representative of the estate.
While the papers before the court are insufficient for the court to determine whether there is a surviving spouse, child, other distributee or personal representative of the estate, a review of the submitted affidavits indicates that the apartment in question was sealed by the police, and that there was no one else in occupancy when the apartment was sealed. No one has apparently paid the rent, assumed occupancy or asserted an interest in the subject premises.
Just as a creditor or anyone else with a claim against a decedent must comply with all legal requirements before taking from the estate, a landlord seeking to recover possession must follow all procedures mandated by law. Neither self-help, nor sham legal process amounting to self-help, is a permissible substitute.
RPAPL 711 (2) permits a summary proceeding for possession to be commenced three months after the tenant’s death *779 by naming and serving a known surviving spouse, surviving issue or an identifiable distributee as respondent. Since the landlord has not yet determined whether an estate representative has been appointed and apparently has no information regarding the existence or the identity of a surviving spouse, children or distributees, the landlord cannot commence a proceeding pursuant to RPAPL 711 (2).
SCPA 1001 (8) and 1002 enable a landlord to petition the Surrogate’s Court to have the Public Administrator appointed as the personal representative of the deceased tenant’s estate. Under SCPA 1002, such a proceeding can be brought by any "person interested in an action * * * about to be brought in which the * * * person alleged to be deceased, if living, would be a proper party”. Upon such appointment, the Public Administrator has the duty to marshal the assets of the estate, including the leasehold and the personal effects in the apartment, to investigate and locate distributees, to dispose of property, to pay debts including past and current rent, out of the estate, and to represent the estate in litigation. Once the Public Administrator is appointed, the owner may then institute a summary proceeding for nonpayment of rent by properly naming and serving the Public Administrator as respondent. (See, 100 W 72nd, St. Assocs. v Murphy, 144 Misc 2d 1036 [Civ Ct, NY County], supra.)[2]
The SCPA procedure advances the important goal of preserving the rights of individuals who may be affected by the outcome of litigation against a decedent. The law does present a landlord with an uncomfortable predicament: it effectively requires the owner to keep the decedent’s apartment unrented while no one is paying current rent. Nevertheless, the law evinces a public policy determination that those having rights derived through a decedent be protected even if the landlord is caused temporary economic hardship.
Bypassing that procedure, as petitioner has done here, would necessarily and inequitably affect any persons who may have rights in the deceased tenant’s estate. Since they are unknown, their rights can be protected only if notice is given to the estate representative, i.e., executor, administrator or *780 the Public Administrator. Such representative is therefore not only the proper party, but a necessary party, to any summary proceeding to recover a deceased tenant’s premises when RPAPL 711 (2) is impracticable.[3] (EPTL 11-3.1; see, CPLR 1001 [a].) Under the circumstances at bar, the petitioner must first institute an appropriate proceeding in Surrogate’s Court and await its determination before commencing a summary proceeding.
Accordingly, this application must be denied because petitioner neither named nor served a proper party respondent.
II. DUE PROCESS CONSIDERATIONS
The statutory requirements that petitioner institute the proper proceedings against an estate representative and, if necessary, first commence a proceeding to appoint an estate representative, are not ritualistic hypertechnicalities. An estate is not considered a person under the law[4] and therefore would not be entitled to constitutional due process protection under the 14th Amendment. (US Const 14th Amend; NY Const, art I, § 6.) However, those persons having rights in or against the estate, i.e., distributees, creditors and persons having legal claims, would be adversely affected by petitioner’s attempt to bypass the clear, reasonable and orderly statutory scheme. Those persons, the real parties in interest, are entitled to due process of law. In the context of this proceeding, due process requires that the estate, through its legal representative, be named a party and served with the notice of petition and petition, as the law requires.
The court file discloses that petitioner left a paper trail of all the filings ordinarily required for a summary proceeding and a warrant application upon the tenant’s default. Merely because the papers were apparently served and filed in conformity with the letter of RPAPL 731, does not assure that *781 personal jurisdiction was acquired over the estate or that the requirements of due process were satisfied. Indeed, when papers are served, as here, with the awareness and expectation that no one capable of responding would ever receive notice, such purported service mocks the very concept of service itself. (See, Mullane v Central Hanover Trust Co., 339 US 306; Eugene Di Lorenzo, Inc. v Dutton Lbr. Co., 67 NY2d 138.)
Irrespective of when the petitioner’s attorneys first learned of the tenant’s death, it is contextually clear that service was not effected in a manner reasonably calculated to give notice of the summary proceeding to a proper party. (See, Mullane v Central Hanover Trust Co., supra.) The requested relief would therefore be unconstitutional. The court, under these circumstances, lacks personal jurisdiction over anyone other than petitioner.
III. ETHICAL CONSIDERATIONS
An attorney must not apply for relief which the attorney knows, or reasonably should be expected to know, is improper. Petitioner’s moving papers, in three obvious places, reveal that, on at least four occasions, petitioner’s own agents knew, or should have known, that the tenant was dead.
First, the affidavit of service of one Howard Sklar, who purportedly served the notice of petition and petition by conspicuous place service, states that Sklar visited the premises on October 26, 1991 and October 28, 1991. A handwritten notation — "Police Sealed” — appears across the printed portion of the affidavit describing the premises.
Next, the affidavit of military investigation of one Antonio Rosa states that on November 9, 1991 Rosa had a conversation with "John Doe”, a "security” (sic), at the premises, and was informed that the tenant’s door was sealed with a police sticker and that the tenant was dead.
Finally, in a second affidavit of military investigation (it is unclear why this second affidavit was submitted), one Joanne Iannone states that she had a telephone conversation with Valerie Viera, bookkeeper for the petitioner, on November 13, 1991 for the purpose of ascertaining whether or not the respondent was in military service. The Iannone affidavit states that Viera said that the tenant was deceased; indeed, the affidavit states that Viera, along with the superintendent, identified the tenant’s body. Iannone’s signature was notarized by one Robyn Friebaum, who works in the petitioner’s attor *782 neys’ office; it thus appears that there was personal contact between the investigator who had learned of the tenant’s death and the landlord’s attorneys.[5]
Had petitioner’s attorneys given even a cursory glance to the papers prior to submission for a final judgment and warrant, any one of these affidavits would have sounded the alarm that the tenant had apparently died and was no longer subject to legal process. Nonetheless, petitioner directed the Marshal to request a warrant of eviction, which request form bears the court’s stamped filing date of November 25, 1991.
Petitioner’s attorneys are specialists in summary proceedings and frequently appear in this court; they should have known that they could not proceed against a dead tenant as if he were still alive. Attorneys may not routinely send files to the Marshal’s office to obtain warrants from the court without reviewing the supporting papers. The law must hold attorneys responsible for the accuracy of papers filed, because the court relies on those papers in determining other people’s rights. This is particularly important in default situations where attorneys are asking the court to rely upon their implied representations that in the absence of opposition, the movants are entitled to the relief sought.
When petitioner’s attorneys learned about the tenant’s death and what they did, or did not do, thereafter is material to the court’s evaluation of the attorneys’ conduct. Code of Professional Responsibility, DR 7-102 (A) (3) provides that:
"A. In the representation of a client, a lawyer shall not: * * *
"3. Conceal or knowingly fail to disclose that which the lawyer is required by law to reveal.”
22 NYCRR 130-1.1, which prohibits frivolous litigation practices, provides as follows:
*783 "(c) For purposes of this Part, conduct is frivolous if:
"(1) it is completely without merit in law or fact and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law * * * In determining whether the conduct undertaken was frivolous, the court shall consider, among other issues, (1) the circumstances under which the conduct took place, including the time available for investigating the legal or factual basis of the conduct; and (2) whether or not the conduct was continued when its lack of legal or factual basis was apparent or should have been apparent to counsel(Emphasis supplied.) At this time, the court lacks a sufficient factual basis for determining whether or not DR 7-102 (A) (3) has been violated. However, petitioner’s own papers prima facie indicate that petitioner’s attorneys engaged in "frivolous” conduct by submitting them to the court whether negligently, without proper attorney review, or deliberately, with the intent to mislead the court.
Within 10 days of the date of this decision, petitioner’s attorneys shall contact chambers to schedule a date for a hearing to determine if counsel engaged in frivolous litigation practices and if sanctions are appropriate.
Accordingly, petitioner’s application for a final judgment and warrant of possession on default is denied without prejudice to the petitioner commencing appropriate proceedings against the proper party in accordance with this opinion.

. On the papers presented in this case, there appears to be no claim that another living person may be entitled to possession; it is distinguishable from cases involving attempts to evict known occupants as holdovers after the tenants of record had died. (See, e.g., Braschi v Stahl Assocs. Co., 74 NY2d 201.) Succession rights under State or Federal law are not apparently at issue here, whether for the balance of the term or for a new or renewed lease. (See, Morrisania II Assocs. v Harvey, 139 Misc 2d 651 [Civ Ct, Bronx County].)

. The appointment proceeding must be brought in the Surrogate’s Court, since the Civil Court lacks subject matter jurisdiction to entertain proceedings brought under the SCPA. A summary eviction proceeding brought against the Public Administrator ordinarily should be commenced in the Civil Court. (See, Sims v Manley, 120 AD2d 405 [1st Dept]; cf., Matter of Piccione, 57 NY2d 278.)

. Indeed, upon the Surrogate’s appointment of an executor or administrator, such estate representative should be deemed a necessary party to any litigation involving the estate, including a summary proceeding properly brought against a surviving spouse, child or distributee under RPAPL 711 (2). Such conclusion not only logically follows from the statutory scheme: it is necessary to prevent possible collusion between the owner and the chosen respondent, and helps assure that other affected persons will be given notice by the estate representative.

. EPTL 1-2.6 defines "estate” as (a) the interest which a person has in property, or (b) the aggregate of property which a person owns. SCPA 103 (19) defines "estate” as all of a decedent’s property "as originally constituted, and as it from time to time exists during administration.”

. It is reputedly a common practice for process servers and investigators working for attorneys to file the affidavits of service and nonmilitary status with the court without having an attorney review the papers for irregularities which could have legal consequences. Since attorneys are responsible for the actions of their employees and agents, and for the accuracy of papers filed in their name, such sloppy practice, however common, cannot unilaterally relieve attorneys from either the obligation to review the papers or the constructive knowledge of their contents. However, in this case, because Friebaum notarized Iannone’s signature, the court must assume that there was personal contact between the investigator and petitioner’s attorneys’ office before the affidavit was filed with the court, and that the attorneys therefore had actual knowledge of the tenant’s death when they submitted the papers.