■ TED S. BRAVO, Respondent, v HILDE TERSTIEGE et al., Appellants. [601 NYS2d 129] —In an action, inter alia, for specific performance of a real estate contract, the defendants appeal, as limited by their brief, from stated portions of an order and judgment (one paper) of the Supreme Court, Suffolk County (Doyle, J.), dated January 30, 1991, which, inter alia, (1) denied their cross motion for summary judgment dismissing three of the plaintiff's causes of action, (2) granted the plaintiff's motion to consolidate a summary proceeding pending in Suffolk County District Court with the instant action provided that he deposit rental payments with the court, (3) granted the plaintiff summary judgment on his first and fourth causes of action to recover the down payment, and (4) directed the Clerk of the Court to remit to the plaintiff the sum of $76,237.50. By decision and order on motion dated October 4, 1991, the defendants' motion to strike "Exhibit A" from the plaintiff's brief was granted.

Ordered that, after argument of the appeal, this Court grants renewal of the motion, and upon renewal, the decision

and order on motion dated October 4, 1991, which granted the defendants' motion to strike "Exhibit A" from the plaintiff's brief, is recalled and vacated, and the motion is denied; and it is further,

Ordered that the order and judgment is affirmed insofar as appealed from, with costs.

The defendants auctioned two adjoining parcels of property bordering on Great Neck Creek in the Town of Babylon. Under the terms of the auction, the highest bidder was given the choice of either of the two parcels. The highest bidders, Anthony and Robert LaSala, who are not parties to this action, chose Parcel No. 2. The plaintiff, as the second highest bidder, signed a contract to purchase Parcel No. 1, which is the subject of this action. At the time of the auction, the plaintiff operated a marina on property adjacent to Parcel No. 1. The plaintiff alleges that his corporation had leased Parcel No. 1 from the defendants for many years prior to the auction.

The plaintiff offered evidence that the auction advertisements and his contract of sale did not indicate that title to the underwater land abutting Parcel No. 1 was purportedly included in Parcel No. 2. Before the date set for closing, the plaintiff learned that the LaSalas were claiming ownership of the underwater land abutting Parcel No. 1. A survey prepared for the LaSalas after the contract signings showed that Parcel No. 2 included the underwater land abutting Parcel No. 1. There is no dispute that the contract of sale between the LaSalas and the defendants purports to grant them all of the defendants' right, title and interest to Great Neck Creek abutting Parcel No. 1. The plaintiff asserted that the LaSalas had constructed docks, based on their claim to the underwater rights abutting Parcel No. 1, which interfered with his use of the existing docks on the property. The plaintiff refused to close title and commenced this action. The defendants subsequently commenced a summary proceeding in District Court for possession of Parcel No. 1, alleging that the plaintiff was a squatter on that property.

We find no basis to set aside the court's determination to consolidate the summary proceeding with the action at bar on condition that the plaintiff continues to pay rent into court while the action is pending. Furthermore, we agree with the court that the plaintiff is entitled to the return of his down payment on the contract of sale for Parcel No. 1.

Although we reach the same result as the Supreme Court, we do so on a different ground. The Supreme Court based its

determination on the law governing title to underwater land abutting nontidal waterways and held that the description of Parcel No. 1 in the contract of sale would include ownership of the abutting underwater land to the center of the creek. However, as the defendants note in their brief, Great Neck Creek is a navigable tidal waterway. The owner of land abutting a navigable tidal waterway has the right to use the area over the underwater land fronting on his property for access to navigable water, even if title to the underwater land is held by another (see, Tiffany v Town of Oyster Bay, 234 NY 15; Trustees of Town of Brookhaven v Smith, 188 NY 74; 3 Warren's Weed, New York Real Property, Land Under Water, § 1.02 [2]; § 6.02 [3]; § 6.05 [3]; § 6.06 [1] [3d ed]). "The right of access comprehends the reasonable, safe and convenient use of the foreshore for navigation, fishing and such other purposes as commonly belong to the riparian owner, exercised in a reasonable manner" (Town of Hempstead v Oceanside Yacht Harbor, 38 AD2d 263, 264, affd 32 NY2d 859).

We need not decide whether the defendants' conveyance to the LaSalas of their interest in the underwater land abutting Parcel No. 1 was valid. Upon purchasing Parcel No. 1, the plaintiff would be entitled to reasonable use of the area over the underwater land abutting that property. The plaintiff submitted evidence, including photographs, that the LaSalas, based on the defendants' purported grant of the title to the underwater land, had constructed docks in front of Parcel No. 1 which would interfere with the plaintiff's use of the property. We agree with the Supreme Court's determination that the plaintiff should not be expected to close the transaction with the defendants and "gamble as to the chance of vindicating his rights vis-a-vis the purchaser of the adjoining property". Compelling the plaintiff to accept the conveyance would be tantamount to forcing him to purchase a lawsuit (cf., Grace v Nappa, 46 NY2d 560). We therefore find that the court did not err in directing the return of the plaintiff's down payment.

We further note that the plaintiff submitted with his brief on appeal a survey map by a licensed land surveyor of the two parcels involved in this litigation. By decision and order on motion dated October 4, 1991, this Court granted the defendants' motion to strike the map, referred to as "Exhibit A" in the briefs, from the record on appeal, because it was prepared after the determination of the Supreme Court. After argument of the appeal, and upon consideration of the entire record, we grant renewal, and, upon renewal, we recall and vacate that decision and order on motion and deny the defen-

dants' motion. At the time the motion was decided, the court did not have an opportunity to evaluate the motion in light of a full presentation of the issues. While ordinarily material dehors the record will not be considered on appeal, there is an exception for a reliable document, whose existence and accuracy is undisputed *(see, e.g., Crawford v Merrill Lynch, Pierce, Fenner & Smith,* 35 NY2d 291, 299; *Brandes Meat Corp. v Cromer,* 146 AD2d 666, 667). For the purpose of sustaining a judgment, incontrovertible documentary evidence dehors the record may be received by an appellate court *(see, State of New York v Peerless Ins. Co.,* 117 AD2d 370; *Kirp v Caleb's Path Realty Corp.,* 19 AD2d 744). Here, the survey map is based on the descriptions in the contracts of sale of both parcels, which were before the Supreme Court and are part of the record on appeal, and the defendants do not contend that the map is inaccurate. Accordingly, we will consider the map on this appeal.

The map shows that the metes and bounds description of the property in the LaSala contract of sale encompasses nearly all of the property described in the plaintiff's contract of sale. This alone provides sufficient grounds to grant the plaintiff's request for the return of his down payment, as the defendants contracted to sell to the plaintiff the same land which they had contracted to sell to the LaSalas. Sullivan, J. P., Rosenblatt, Lawrence and O'Brien, JJ., concur.