OPINION OF THE COURT
Memorandum.
In this nonpayment proceeding, the petition, dated August 4, 2003, seeks the monthly rent of $490 for the months of January 2002 through August 2003 plus $100 legal fees for a total of $9,900 for apartment 7 at 1010 Hegeman Avenue, Brooklyn, a rent-stabilized unit. Tenant answered, asserting, inter alia, that she had paid her rent to her landlord as directed by him, that petitioner is not her landlord, and that she was not “informed of petitioner.”
On September 24, 2003, the case was adjourned to October 8, 2003 for tenant to see if her August and September 2003 rent checks were cashed by someone other than petitioner. On October 8, 2003, tenant was in court, landlord failed to appear, and the case was dismissed based on landlord’s nonappearance.
By notice of motion dated October 9, 2003, landlord moved to restore the matter to the calendar. In a supporting affidavit, Isaac Schwartz stated that he is landlord’s managing agent; that his attorney (Jacob Gelfand) was detained in another Part on October 8, 2003 and missed the calendar call; and that tenant owed $10,780 through October 2003.
On October 22, 2003, the parties, tenant appearing pro se, entered into a so-ordered stipulation (O. Chin, J.) providing that landlord would have a final judgment in the sum of $1,540, consisting of rent of $490 for August, September and October 2003 and $10 per month due for January through July 2003. Execution of the warrant was stayed until December 21, 2003 for full payment. Tenant also was to pay or prove payment of July 2003 rent by December 21, 2003. Landlord was to inspect and repair mold and other conditions.
Tenant was evicted on January 20, 2004. She moved that day by order to show cause (OSC) to, inter alia, be restored to possession. Said OSC stayed reletting and removal of tenant’s possessions. In her supporting affidavit, tenant claimed that she had mailed her rent to landlord as directed and that she had mailed all the payments due through January 31, 2004.
Landlord did not submit written opposition.
By order dated January 22, 2004, the housing court, without having heard any sworn testimony, denied tenant’s motion. The *10 court’s order recites that landlord stated that he never received tenant’s checks; that tenant had had the funds in her checking account for 30 days until she was evicted and had never returned to court; and that there was no legal basis to restore tenant to possession.
On January 23, 2004, this court signed an OSC by tenant seeking a “stay.” The OSC stayed all proceedings including the reletting of the premises pending determination of the motion.
In support of the OSC, tenant pro se stated that landlord had deliberately created this situation by suing her for monies that were never owed and then refusing to cash her checks for the rent. She was never served with a marshal’s notice. She mailed her checks to landlord on December 19, 2003 and the checks were never returned. The money is still in the bank. Her daughter has no place to stay when she gets home from school. She has lived in the apartment for 16 years and has always paid her rent promptly. She is attaching an affidavit from her former landlord attesting to the fact that, as of the date of the building’s sale in April 2003, her rent payments were up-to-date and that they had always been timely. She asked landlord if she could pay the $1,540 in installments, but landlord wanted the monies to be paid in one payment of $1,540 on December 21, 2003, and she agreed. Landlord gave her a new lease at an increase of $71.90. She questioned this but finally agreed and made one payment of $3,143 to include the $1,540 and the November and December rent. On January 2, 2004, she mailed a check to landlord for $561.90 for January rent. On January 20, 2004, landlord and the marshal came and evicted her. She did not know why she was being evicted.
Tenant also submitted a notarized statement from several other tenants in the building stating that, since landlord bought the building, it had repeatedly refused to accept their monthly rent payments and had brought all of them to court for nonpayment. Tenant attached her bank statement showing a balance of $3,333.64 on December 19th and larger balances thereafter.
Tenant further submitted a notarized letter from her former landlord stating that tenant had resided in the apartment for more than 15 years and had always paid her rent in full and on time through April 30, 2003. It is beyond his “understanding and belief for her to be evicted for nonpayment.”
In opposition, Isaac Schwartz stated that a new tenant, Monique Reid, had signed a lease for the premises on January 20, 2004 (the day of the eviction) prior to the service of the Civil *11 Court’s OSC on landlord on January 21, 2004. All of tenant’s belongings were removed prior to the stay, and there is a new tenant in possession. He has not received any money from tenant by mail or otherwise, and the eviction did not take place until 30 days after payment was to be made. He attached a copy of the new lease and a photo identification of Reid.
In reply, tenant stated that, in May 2003, she was introduced to a Mr. Jay Knopf as the new owner, and he directed her to mail the rent to him. She mailed the rent to him each month. In September, she received an eviction notice from Pacific Management. She thought it was a hoax. She called the attorney listed on the notice, Jacob Gelfand, and he was very rude. He told her to call Pacific Management. She did, and got the same treatment. She tried to contact Mr. Knopf, but could not. Between the end of August and the end of September, her mailbox was opened twice, and she did not receive her bank statements. She called her bank and discovered that her checks had not been cashed. On October 22, 2003, “Shroggy” (Isaac Schwartz) of Pacific Management told the court that he was the new owner and that he had no idea who Jay Knopf was. She proved to the court that she did not owe the monies sought, but landlord was given a final judgment for the rent which had accumulated during the court proceedings and for the money orders and checks that were not cashed. Landlord was supposed to inspect and repair. She waited, but no one came at the appointed time. She received her bank statement in mid-January and noticed the monies were still in the account. She decided that, if the repairs were not done, she would go back to court. On January 20th, she was humiliated when landlord, the marshal and the police evicted her. On January 22nd, she fainted when she was told in court that landlord had removed her belongings and had someone new move in. She was subsequently informed that, on January 28, 2004, landlord was in the apartment removing and giving away the remainder of her belongings. The super told her that he went to the apartment on January 28th and, when he saw her papers all scattered, put them in a bag.
By order dated February 25, 2004, this court sua sponte amended the OSC dated January 23, 2004 to provide that landlord, its attorney, and the alleged new tenant in possession show cause at a hearing why an order should not be made restoring tenant appellant to possession pending appeal and/or summarily reversing the January 22, 2004 order of the Civil *12 Court. The hearing was directed in order to test the bona tides of landlord’s claim to this court, disputed by tenant, that there was a new tenant in possession and, if there was such a new tenant, to allow this court to determine if restitution should be made. The order also directed that the alleged new tenant be served at the premises. All parties were afforded an opportunity to submit such further papers as they deemed advisable.
In an affidavit of service, tenant’s sister stated that she went to the apartment on March 1, 2004 and was invited in by workmen. The apartment was entirely vacant and under repair. There was no furniture or sink, the stove was unconnected, and the flooring was dug up. She taped the papers to the door and mailed a copy to the new tenant at the premises.
A hearing and oral argument were held before this court on March 10, 2004. At the hearing, the alleged new tenant, Monique Reid, appeared and did not object to service. Reid testified that she was shown the apartment on January 20, 2004, the day of tenant appellant’s eviction; that she had paid landlord $1,300, representing one month’s rent and a security deposit; that she had moved in the next day; that she had remained in occupancy for two weeks but had then moved out to allow landlord to do renovations, for which she paid; and that she had moved back into the apartment the day before the hearing. Ms. Reid was unable to document that any utility services were being supplied in her name.
Tenant appellant reiterated the facts stated in her affidavit and introduced proof that her July 2003 money order had been cashed. She further testified that the apartment had remained vacant since the eviction and that, if the new tenant had moved in, she had done so only in the morning of the hearing. She introduced into evidence photographs taken of the premises which showed that it was being renovated and was not occupied. She stated that she could not find an affordable apartment, particularly since she had been evicted for nonpayment of rent.
Landlord’s attorney argued that this court should not disturb the determination of the housing court as to credibility. He claimed that tenant had refused to pay the arrears until landlord made the repairs. Counsel conceded that the facts did not support the allegation in the petition as to the amount of rent sought.
Isaac Schwartz testified that he was under the impression, when he bought the building, that tenant owed $10,000. He settled for a lesser amount because tenant came in with all the receipts.
*13 In our view, the appellate remedy of summary reversal (see e.g. People v Allen, 303 AD2d 686 [2d Dept 2003]) is appropriate here because of the existence of clear error and exigent circumstances (34 Crescent St. Assoc. v U.S. Fish Depot Corp., 4 Misc 3d 143[A], 2002 NY Slip Op 50720[U] [App Term, 2d & 11th Jud Dists 2002]).
The housing court, which had before it a sworn affidavit by tenant asserting that she had complied with the terms of the stipulation, and no sworn opposition by landlord, gave weight to landlord’s managing agent’s unsworn claim, at oral argument, that he had not received tenant’s checks. In the absence of a hearing, the court had, contrary to landlord’s claim, no proper basis upon which to form a determination of credibility. This error was especially harmful because, as will be shown, the Civil Court record demonstrates that landlord’s agent was particularly lacking in credibility. In and of itself, this error requires reversal of the Civil Court order.
Moreover, as previously noted, landlord commenced this proceeding seeking $9,800 in arrears allegedly dating back to January 2002, long before its purchase of the building. After a default by landlord, its managing agent swore that tenant owed $10,780 through October 2003. Yet, as is evident from the terms of the stipulation and from the subsequent proceedings, tenant owed virtually no arrears prior to the commencement of this proceeding.
In view of the magnitude of the discrepancy between the amount sought in the petition and the amount, if any, actually owed at the commencement of the proceeding, it was an abuse of discretion for the housing court to so order the stipulation awarding judgment to landlord (see Hughes v Lenox Hill Hosp., 226 AD2d 4, 18 [1996] [a petition containing material misstatements should be dismissed as a matter of equity]; Schwartz v Weiss-Newell, 87 Misc 2d 558, 561 [1976] [a proper rent demand must be in the approximate good-faith sum of rent assertedly due]). Accordingly, we vacate the stipulation and final judgment and dismiss the petition (Hughes v Lenox Hill Hosp., 226 AD2d at 18).
Upon a balancing of the equities (Fusco v Kraumlap Realty Corp., 1 AD3d 189 [2003]; Chester Mamaroneck Gardens v Riggsbee, 189 Misc 2d 439, 441 [2001]), it is evident that the equities weigh heavily in favor of tenant appellant, who has resided in this rent-stabilized unit for 16 years, who has had an excellent payment history, and who had no rent-related *14 problems until this landlord purchased the building. Accordingly, the new tenant having been served and joined, tenant appellant is directed to be restored to possession forthwith. In ordering this restoration, we invoke not only the power of the Civil Court to award restitution (CPLR 5015 [d]; CCA 212; Iltit Assoc. v Sterner, 63 AD2d 600 [1978]), but, inasmuch as we also vacate the final judgment pursuant to which possession of the property was transferred, our own original power to do so as well (CPLR 5523; Haebler v Myers, 132 NY 363 [1892]).
In the absence of a credible explanation, the circumstances presented give rise to a strong inference that the commencement and prosecution of this proceeding involved conduct that was completely without merit in fact. If she be so advised, tenant appellant may move in the court below pursuant to Rules of the Chief Administrator of the Courts (22 NYCRR) § 130-1.1 to recover the costs that she incurred as a result of the maintenance of this proceeding, including the reasonable attorney’s fees that she incurred in moving in the housing court to be restored to possession, and for sanctions of up to $10,000 against landlord and/or its attorney. In determining such motion, the court shall consider the full extent of landlord’s and its attorney’s conduct, including the question whether there was a building-wide scheme to evict the building’s current tenants and the question of whether the allegation in the petition that $9,800 was owed and the averment, in the affidavit submitted after landlord’s counsel had already conferenced the matter with tenant, that tenant owed $10,780, had any basis in fact (see generally Code of Professional Responsibility DR 1-102 [a] [4] [22 NYCRR 1200.3 (a) (4)]), and shall take such action as may be warranted. In addition, tenant may pursue whatever other remedy that she deems appropriate (e.g. RPAPL 853; Rent Stabilization Code [9 NYCRR] §§ 2525.5, 2526.2 [c] [2]). This decision is without prejudice to whatever remedy, other than specific performance, that the new tenant, Monique Reid, may have against landlord with respect to the lease given her and the monies that she paid to landlord.
Pesce, PJ., Golia and Rios, JJ., concur.