*33 OPINION OF THE COURT
Memorandum.
Final judgment unanimously reversed with $30 costs and petition dismissed, with leave to tenant, if she be so advised, to seek costs and sanctions in the court below. Landlord is directed to make restitution to tenant of the sum of $6,487.50, received in satisfaction of the final judgment, within 15 days of the date of the order hereon (CPLR 5523).
In this nonpayment proceeding, landlord seeks to recover alleged monthly rent of $187.50 for the months of October 1999 through August 2000 and $912.50 for the months of July 2001 through June 2002. Landlord claims that the rent increase is based upon an individual apartment improvement (IAI) and that tenant gave written consent to the increase, as required by section 2522.4 (a) (1) of the Rent Stabilization Code (9 NYCRR). Tenant denies that she consented to the increase.
Landlord’s principal, Deodat Lowtan, testified at trial that, on August 26, 2000, he accompanied tenant to a notary (Lilly Kalin) and observed tenant sign the consent form. Samuel Ross, Lilly Kalin’s son, testified that he also observed tenant sign the document, that his mother was in her 80s, and that he held the document while she notarized it. Landlord also submitted a post-renovation consent document, dated July 11, 2001, which Lowtan claimed that he observed tenant sign. Segundo Almadie also testified that he witnessed tenant and her husband sign the latter document. (The document introduced into evidence is not signed by tenant’s husband.) Finally, landlord introduced a renewal lease which, Lowtan claimed, tenant signed in his presence on December 29, 2001.
Tenant testified that she did not sign any of these documents. Tenant’s daughter, who was present with landlord’s principal and tenant on July 11, 2001, testified that tenant and her husband signed a document which only contained an acknowledgment that landlord had fixed a leak.
After trial, the court found that, on August 26, 2000, tenant entered into an agreement with landlord to pay the rent increase.
On this appeal, tenant shows, by way of a certified copy of a death certificate, that Lilly Kalin died on August 29, 1989, 11 years before the August 26, 2000 document was purportedly notarized by her. The death certificate states that Kalin’s son, Charles Ross, reported her death. Confronted with this proof, *34 landlord’s attorney concedes on appeal that Kalin was dead but argues that the housing court’s determination should be upheld based upon Lowtan’s and Ross’ independent testimony that they observed tenant sign the August 26, 2000 document and based upon the testimony concerning the other two documents.
We strongly reject landlord’s contention.
At the outset, we note that “reliable documents, the existence and accuracy of which are not disputed,” may be considered, although dehors the record, “even for the purposes of modifying or reversing the order under review” (Brandes Meat Corp. v Cromer, 146 AD2d 666, 667 [1989]; see Crawford v Merrill Lynch, Pierce, Fenner & Smith, 35 NY2d 291, 298-299 [1974]; Bravo v Terstiege, 196 AD2d 473 [1993]). Moreover, landlord concedes the accuracy of the information contained in the death certificate. Accordingly, we find, based on the death certificate and landlord’s admission that Lilly Kalin was dead at the time that she purportedly notarized the August 26, 2000 consent document, that her signature thereon was forged and that the notary stamp indicating that Lilly Kalin’s commission expired in 2001 was fraudulent. We further find that the testimony of Ross and Lowtan that they observed tenant sign the document in front of the notary was perjured. In view of the knowledge, willfulness arid blatant corruption involved in this peijury and forgery, we disregard all of their testimony (Deering v Metcalf, 74 NY 501 [1878]), including Lowtan’s testimony that tenant signed the July 11, 2001 consent document and the renewal lease in his presence. Inasmuch as the July 11, 2001 consent document incorporates the forged August 26, 2000 document by reference, and inasmuch as this document is not signed by tenant’s husband, we also refuse to credit Almache’s testimony that he observed both tenant and her husband sign the July 11, 2001 consent document.
In view of the foregoing and in the absence of any credible testimony to the contrary, we credit tenant’s testimony that she did not sign any of the documents asserted by landlord and that she did not consent to the IAI increase. Accordingly, we dismiss landlord’s claim for this increase with prejudice. The remainder of landlord’s petition is dismissed because the petition is tainted by fraud (see Hughes v Lenox Hill Hosp., 226 AD2d 4, 18 [1996] [a petition containing material misstatements should be dismissed]; Hegeman Asset LLC v Smith, 5 Misc 3d 8 [2004]). In addition, we direct restitution of the monies collected pursuant to the final judgment (CPLR 5523).
*35 Furthermore, since the crux of this matter concerned landlord’s right to the IAI increase and since we find this right to have been fraudulently asserted, tenant, if she be so advised, may move in the court below, pursuant to section 130-1.1 of the Rules of the Chief Administrator (22 NYCRR) to recover the costs, including the reasonable attorney’s fees, that she incurred in defending this proceeding, and for sanctions.
We note that the record indicates that, after purchasing the building at a foreclosure sale for $60,000, landlord commenced a baseless squatter proceeding against tenant, who has resided in the building as a rent-stabilized tenant for 25 years. We further note that tenant alleges that landlord commenced similar proceedings against all the other tenants in the building, in an effort to rid the building of its occupants; that all of the other tenants left; that landlord threatened to make tenant’s life miserable if she did not leave; and that landlord commenced a plenary action against tenant seeking $100,000 for alleged massive damage to the apartment yet admitted at the trial, herein that the condition of the apartment was “regular” and “normal.”
Section 12 (a) (1) (f) of the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4, as amended [McKinney’s Uncons Laws of NY § 8632 (a) (1) (f)]) precludes the assertion in the courts of a claim attacking the agreed-upon rent where the tenant had previously filed an overcharge complaint with the Division of Housing and Community Renewal and that complaint is still pending. In those circumstances, the rule is that the nonpayment proceeding goes forward based upon the agreed-upon rent (Marz Realty v Reichman, 2003 NY Slip Op 50700[U] [App Term, 2d & 11th Jud Dists 2003]; Fromme v Perper, NYLJ, May 6, 1987, at 12, col 1 [App Term, 1st Dept]) unless the tenant seeks a stay and shows a likelihood of success before the agency (Reynolds v Division of Hous. & Community Renewal, 199 AD2d 15 [1993]). These rules have no application here, even though tenant had filed an overcharge complaint prior to the commencement of this proceeding and the complaint was still pending at the time of trial, because tenant is challenging landlord’s claim that there was an agreed-upon rent.
In addition, we note that the record on appeal does not indicate the disposition of tenant’s counterclaim for emotional distress, which counterclaim should have been severed.
Pesce, PJ., Aronin and Golia, JJ., concur.