OPINION OF THE COURT
Pam Jackman-Brown, J.
Factual Background
All the above-cited cases are consolidated for the purpose of this decision. On May 25, 2004, the petitioners filed notices of petition and petitions with the court to commence nonpayment proceedings against each of the respondents herein. Each respondent failed to appear and answer. On or about June 9, the petitioners, through their attorney, Mr. Marvin H. Rose, filed with the clerk’s office applications on each case herein for entry of default judgments and issuance of warrants of eviction. All the applications were submitted to the “judge for a final judgment and eviction warrant” on default. All the applications were submitted to this court for review and consideration.
In each case, attached to the request for a default judgment and warrant of eviction, affidavits of military investigation were included in support of the default applications. Each affidavit was signed by Ms. Alice McCarthy who swore that she conducted the investigation of the nonmilitary status for each respondent. All the affidavits were signed and sworn to by Ms. McCarthy on June 9, 2004 before a notary public.
In the affidavits in support of the default application for Kennedy Plaza, LLC v Ibe, Kennedy Plaza, LLC v Powell and Kennedy Plaza, LLC v Patterson, Ms. McCarthy stated, “On June 8, 2004 at 10:00 a.m., I had a conversation with Simeon Caballero, the superintendent for the Petitioner.”
In the affidavits in support of the default application for Kennedy Plaza, LLC v Carter & Fairlough and Kennedy Plaza, LLC v Milliner, Ms. McCarthy stated, “On June 8, 2004 at 10:05 a.m., I had a conversation with Simeon Caballero Superintendent for the Petitioner.”
In the affidavit in support of the default application for Heritage E.-W., LLC v Chi Won Chung, Ms. McCarthy stated, “On *525 June 8, 2004 at 10:05 a.m., I had a conversation with Kevin Cullen superintendent for the Petitioner.”
In each affidavit, Ms. McCarthy swore that the superintendents told her that they spoke to each respondent in person and that each respondent stated that they were not in the military or dependent on anyone in the military.
In reviewing the default applications, the court observed that Ms. McCarthy was speaking to two different people separately at different addresses at the same time on the same date (June 8, 2004 at 10:05 a.m.) and that in three of the applications, she engaged in three distinct conversations with the same superintendent concerning different respondents residing in different apartments at the same time on the same date (June 8, 2004 at 10:00 am.). The court further observed that in each affidavit the superintendents seemingly were able to provide detailed information simultaneously about each respondent’s rental status and length of tenancy.
Based on these discrepancies, this court set all six cases down for further inquiry based on the questions raised regarding the investigations of the nonmilitary affidavits. On July 20, 2004, a letter was sent to both sides on each case for all parties, including Ms. McCarthy, to appear for a hearing on July 27, 2004, in Part A, room 401 at 2:30 p.m.
On July 27, 2004, Mr. Robert Tolle appeared, of counsel to Mr. Marvin Rose, the attorney for the petitioners, and four of the six respondents appeared including respondent Choi, who needed a Korean interpreter. Mr. Tolle stated that neither the petitioners nor Ms. McCarthy would be appearing. Mr. Tolle produced a supplemental affidavit in lieu of Ms. McCarthy’s appearance. The court ordered that Ms. McCarthy appear. The hearing was adjourned to July 28 to obtain a Korean interpreter for respondent Choi and for Ms. McCarthy to appear with both superintendents.
On July 28, the hearing on the six cases commenced. Neither the petitioners, Ms. McCarthy, nor superintendent Simeon Caballero, appeared. On Kennedy Plaza, LLC v Ibe, Kennedy Plaza, LLC v Powell and Kennedy Plaza, LLC v Milliner, each respondent testified that at no time did the superintendent, Mr. Caballero, speak to them regarding their military status. Respondents Ibe and Milliner stated that they confronted Mr. Caballero and asked him about the information and told him to appear in court but he refused to get involved. The respondents in Kennedy Plaza, LLC v Patterson and Kennedy Plaza, LLC v *526 Carter & Fairlough did not appear. Mr. Tolle had no explanation for the nonappearance of the petitioners or the superintendent, Mr. Callabero. In Heritage E.-W, LLC v Chung & Choi, both the superintendent and Mr. Choi appeared. Mr. Choi testified, with the assistance of the Korean interpreter, that no one spoke to him regarding anything about his military status. The superintendent, Kevin Cullen, testified that he spoke to Ms. McCarthy and confirmed that he had not spoken to Mr. Choi nor did he ask Mr. Choi about his military status because he knew he was elderly.
In addition to the military information, the nonmilitary affidavits also included the date of commencement of each tenancy. All four respondents testified differently as to the date their tenancy began. The superintendent, Mr. Cullen, could not remember the date of commencement of respondent Choi’s tenancy.
Mr. Tolle stated that he was discontinuing the proceeding and, based on his discontinuance, the hearing was unwarranted. The court adjourned the hearing once more for Ms. McCarthy and the attorney of record, Mr. Rose, to appear. Mr. Tolle stated that Ms. McCarthy was afraid of court and would rather quit her job than appear in court. The hearing was adjourned to July 30, 2004 for Mr. Tolle to inform the court whether the petitioners, Mr. Rose and Ms. McCarthy, would appear. On July 30, Mr. Tolle informed the court that he spoke to both Mr. Rosé and Ms. McCarthy and conveyed to them the gravity of the situation. He said that they changed their practices and procedures for military investigations and that they would appear on August 5.
On August 2, both Mr. Rose and Mr. Tolle filed with the clerk’s office notices of discontinuance pursuant to CPLR 3217 (a) (1).
On August 5, Mr. Rose, Mr. Tolle, Ms. McCarthy, with her attorney, and two respondents appeared. No principal for the petitioners appeared. Mr. Tolle appeared, of counsel to Mr. Rose, and represented that he was also appearing as attorney for Mr. Rose. This court informed Mr. Tolle that he could not make a dual appearance, both as of counsel and as attorney, for the same person. Mr. Rose stated that he was the attorney of record and that he reviewed and signed all the papers. On advice of her counsel, Ms. McCarthy testified that the signature on each nonmilitary affidavit was hers but invoked her “fifth amendment” right and refused to answer all other questions for each of the six affidavits she signed.
*527 On September 21, all six cases were set down for a hearing on the possible imposition of sanctions. (See letter dated Aug. 20, 2004.) Mr. Rose appeared with counsel, and Mr. David Massimilla, a managing member for the petitioners, appeared with counsel. Also, two respondents appeared. Mr. Massimilla testified credibly that he was unaware that the proceedings were commenced and there was no authorization given by the petitioners to commence any of these proceedings. His testimony was undisputed. Mr. Rose testified that he is the vice-president of Diversified Realty Corporation which, he claims, manages the buildings for the petitioners and that he is also the attorney for the petitioners. He stated that he made the decision to commence the proceedings herein. He further testified that Ms. McCarthy is his employee and that he authorized her to prepare the papers and conduct the investigation for the nonmilitary affidavits for the default applications in each case. Notably, Mr. Rose is both the vice-president and attorney of record but there is no mention in any of the pleadings that these proceedings were commenced by a management company. There was no explanation for Ms. McCarthy’s testimony and the false nonmilitary affidavits.
Reasoning
Upon application for a default judgment pursuant to RPAPL 732 (3), the court is empowered to review the papers to see if the necessary criteria are satisfied to issue a default judgment and warrant of eviction. The papers on review must satisfy three basic factual predicates to grant the default application. The court must review each application to determine “whether petitioner has submitted an affidavit or certificate of service of the notice of petition and petition, and whether the tenant has failed to respond within five days of the date of service” (see, Matter of Brusco v Braun, 84 NY2d 674, 680 [1994]). The third criterion is to determine whether the petitioner has submitted a nonmilitary affidavit pursuant to the federal Servicemembers Civil Relief Act and the New York State Soldiers’ and Sailors’ Civil Relief Act. If all three of these criteria are met, the court must grant a judgment in favor of the petitioner. The Court of Appeals makes it clear that the court shall not look behind the default and conduct a fact-finding process through an inquest where there is “no question” regarding the sufficiency of the application and the papers in support of the application (id. at 681 [emphasis added]).
*528 Under federal and state law, the petitioner must submit to the court proof that the individual against whom a default judgment is sought is not in the military service or dependent upon anyone in the military. (See, Servicemembers Civil Relief Act, 50 USC Appendix § 501 et seq.) New York State Soldiers’ and Sailors’ Civil Relief Act, Military Law § 300 et seq.) A default judgment may not be entered and a warrant of eviction may not be issued in a summary nonpayment proceeding unless the petitioner complies with the federal and state requirements (see, Cornell Leasing Corp. v Hemmingway, 147 Mise 2d 83 [Civ Ct, Kings County 1990]). The petitioner must file an affidavit attesting that the respondent is not in the military or dependent on anyone in the military before a default judgment may be entered (see, 50 USC Appendix § 521 [b] [1]). The affidavit must set forth the factual basis of the investigator’s conclusion that the respondent is neither in the military nor dependent upon someone in the military (see, Mill Rock Plaza Assoc, v Lively, 153 Mise 2d 254 [Civ Ct, NY County 1990]). Upon reviewing the applications, the court observed that Ms. McCarthy, in each nonmilitary affidavit, attested that she spoke to two persons at the same time on the same date and in some instances she was speaking to the same person at the same time about several respondents. Based on these observations, these affidavits raised questions of irregularities and a hearing was ordered on the nonmilitary affidavits for an explanation on the investigation conducted by Ms. McCarthy. (Compare, Matter of Brusco v Braun, 84 NY2d 674 [1994], supra.) The petitioners’ attorneys, then, attempted to discontinue all the proceedings pursuant to CPLR 3217 (a) (1) to circumvent the hearing.
CPLR 3217 (a) (1) provides that a claim may be discontinued without an order
“by serving upon all parties to the action a notice of discontinuance at any time before a responsive pleading is served or within twenty days after service of the pleading asserting the claim, whichever is earlier, and filing the notice with proof of service with the clerk of the court” (emphasis added).
The petitions and notices of petition were all served by conspicuous place service. Service by other than personal delivery is complete upon filing proof of service with the clerk of the court (RPAPL 735 [2] [b]). Proof of service in these cases was filed with the clerk on May 25, 2004. The notices of discontinuance were filed on August 2, 2004. Therefore, although no answers *529 were interposed, the notices of discontinuance were untimely since they were not filed within 20 days of service of the petitions. Therefore, the petitioner did not have the right to discontinue these cases without the order of the court.
The filing of notices of discontinuance with the clerk of the court by Mr. Rose and Mr. Tolle in an attempt to circumvent the hearing and curtail inquiry by the court into possible improper conduct committed in these cases is unavailing. Whether the petitions have been satisfied and/or whether the petitioners no longer wish to maintain these proceedings have no bearing on the issue of whether the petitioners or petitioners’ attorneys filed fraudulent affidavits with this court. The sole subject of this hearing is to determine whether sanctionable conduct has been committed upon the court. The petitioners or their attorneys are not entitled to evade the scrutiny of the court for improper conduct merely by discontinuing the cases.
The affidavits submitted show irregularities in the time sequence of the investigations, to wit, the inability to conduct simultaneous investigations with different persons at separate locations at the same time or with the same person concerning the detailed information of tenancies of several respondents at the same time. The scrutiny of the court was proper since the sworn affidavits included patently bald-faced contradictory statements which raised questions of their veracity. (Cf. Matter of Brusco v Braun, 84 NY2d 674 [1994], supra.)
At the hearing, the court was unable to ascertain whether proper investigations were conducted since Ms. McCarthy, the affiant, invoked her Fifth Amendment right under the United States Constitution on the witness stand. In addition, superintendent Cullen could not provide any credible information of how he knew that respondent Choi was not in the military. Notably, respondent Choi resides with respondent Chung in the subject premises. There was no testimony from the superintendent of whether or how he acquired knowledge of respondent Chung’s military status.
Merely seeing someone, knowing their age or having a casual conversation does not suffice for the affidavit unless specific questions are asked regarding whether the person is in the military or dependent on anyone in the military. The person attesting to the information in the nonmilitary affidavit must have knowledge either through a conversation with the respondent, through some document relating to the respondent or through inquiry from the Department of Defense. Assuming su *530 perintendent Cullen spoke to Ms. McCarthy, which this court does not conclude, a proper investigation cannot be based solely upon the knowledge that the respondent is elderly. It is possible that a senior person may be employed in the armed services in some capacity, and it is certainly possible for an elderly individual to be dependent on someone in the military. Assumptions of military status based on just seeing someone is insufficient to satisfy a proper investigation under 50 USC Appendix § 521 (b). In the instant cases, no investigation was conducted for the nonmilitary affidavits in each of the six cases and the court concludes that all six affidavits are false.
If the affidavits filed in and submitted to the court contain false statements in support of the default applications, the court may order a hearing to determine if the petitioner or attorney has engaged in frivolous conduct pursuant to the Rules of the Chief Administrator of the Courts or the Disciplinary Rules of the Code of Professional Responsibility (see, East Harlem Pilot Block Bldg. 1 v Serrano, 153 Misc 2d 776 [Civ Ct, NY County 1992]; see, 275 Linden Realty Corp. v Caraballa, 5 Misc 3d 32 [App Term, 2d & 11th Jud Dists 2004]; see, Hegeman Asset LLC v Smith, 5 Misc 3d 8 [App Term, 2d & 11th Jud Dists 2004]).
Pursuant to the Rules of the Chief Administrator of the Courts (22 NYCRR 130-1.1 [a]), the court may impose sanctions upon a party or attorney who engages in frivolous conduct. Conduct is deemed frivolous if, inter alia, “it asserts material factual statements that are false” (22 NYCRR 130-1.1 [c] [3]). The court may impose sanctions on its own initiative, after a reasonable opportunity to be heard (22 NYCRR 130-1.1 [d]). The power to impose sanctions pursuant to the Rules of the Chief Administrator of the Courts extends to Judges of the Housing Part of the New York City Civil Court (22 NYCRR 1301.4). In order to impose sanctions for frivolous conduct, this court must conduct a hearing and afford the respondent and respondent’s attorneys the opportunity to be heard (22 NYCRR 130-1.1 [d]; see, Moore v Deng, NYLJ, May 27, 1997, at 31, col 1 [App Term, 2d & 11th Jud Dists]). “The form of the hearing shall depend upon the nature of the conduct and the circumstances of the case” (22 NYCRR 130-1.1 [d]).
On September 21, 2004, the unrefuted testimony shows that there was no authorization to commence these proceedings and no investigation was conducted for the nonmilitary affidavits. All the nonmilitary affidavits in each of the cases herein are false. Mr. Rose, acting as vice-president for the alleged manage *531 ment company and attorney for the petitioners, made the decision to commence the proceedings. It was under Mr. Rose’s authority and control that Ms. McCarthy prepared the fraudulent nonmilitary affidavits and Mr. Rose authorized the filing of the papers with the default applications in court for issuance of default judgments and warrants of eviction. There was no explanation proffered for the false statements in each of the six affidavits.
Attorneys may not submit files to the marshal or the court to obtain judgments and warrants of eviction without reviewing the supporting papers, but must be held responsible for the accuracy of papers filed, especially in default situations where the petitioner and its attorneys are asking the court to rely upon their representations to obtain a judgment and warrant of eviction (see, East Harlem Pilot Block Bldg. 1 v Serrano, 153 Misc 2d 776 [1992], supra). Although the nonmilitary affidavits in these cases are those of Alice McCarthy, the responsibility for the accuracy and truthfulness of the statements contained therein ultimately falls upon the petitioner and the petitioner’s attorney who filed them with the court (id.). This is now doubly true in the aftermath of the September 11 attacks and the state of war that currently exists. An attempt to procure, through the court, default judgments and warrants of eviction, by submitting false affidavits of investigation of nonmilitary status, is especially egregious given the present state of emergency where it is more likely than at any time in recent memory that citizens regardless of age are in the service of the armed forces or are being called upon to serve their country. Moreover, it is a violation of the Disciplinary Rules of the Code of Professional Responsibility for a lawyer to “[ejngage in conduct involving dishonesty, fraud, deceit, or misrepresentation” (DR 1-102 [a] [4] [22 NYCRR 1200.3 (a) (4)]). Further, a lawyer is responsible for the conduct of a nonlawyer employed by the lawyer if the lawyer orders or directs the conduct or, with knowledge of the conduct, ratifies it, or the lawyer, in the exercise of reasonable management or supervisory authority, should have known of the conduct so that reasonable remedial action could have been taken (DR 1-104 [d] [1], [2] [22 NYCRR 1200.5 (d) (1), (2)]).
“DR 1-104(D) (2) prevents a lawyer from attempting to lay blame upon a partner, associate or nonlawyer employee for misconduct that occurs in the lawyer’s office. This provision recognizes that a lawyer is under a duty to know how a client’s file is being *532 handled and cannot simply claim ignorance of another’s misconduct” (Connors, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29, Code of Professional Responsibility DR 1-104, at 425).
Ms. McCarthy is an employee of the petitioners’ attorney, Marvin Rose. Neither Ms. McCarthy nor Mr. Rose presented any explanation of the patently false affidavits. They did not explain how it was possible to conduct investigations of the military status of six different tenants simultaneously. They offered no explanation for the testimony of respondents which contradicted the sworn statements of Ms. McCarthy and the superintendent that they spoke to the respondents and inquired of their military status. The court concludes that the nonmilitary affidavits in the instant cases are false and that Mr. Rose, the attorney for the petitioners knew or should have known that they were false but submitted them to the court with either actual or imputed knowledge of their falsity in order to procure default judgments and warrants of eviction.
Accordingly, the court, pursuant to part 130 of the Rules of the Chief Administrator of the Courts, imposes sanctions against Marvin Rose, Esq., in the amount of $1,000 for each of the six cases herein, for a total of $6,000. Mr. Rose shall deposit said amount with the Lawyers’ Fund for Client Protection, pursuant to 22 NYCRR 130-1.3, no later than November 30, 2004.
The court will refer these matters to the appropriate agencies and authorities for any appropriate investigation.